UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

|  |  |  |
|---|---|---|
| ———————————————— ) | | |
| NATHAN RIECK and BRIAN POARCH, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | Civil Action No. 5:19-cv-05104-TLB |
| v. | ) ) | |
| P.A.M. TRANSPORT, INC., and PAM CARTAGE CARRIERS, LLC, | ) ) ) | **JURY DEMAND** |
| | ) | |
| Defendants. | ) ) | |
| ———————————————— ) | | |

**FIRST AMENDED COMPLAINT -
CLASS ACTION AND COLLECTIVE ACTION**

1.      Plaintiffs Nathan Rieck and Brian Poarch, on behalf of themselves and all others similarly situated, by and through undersigned counsel, file this First Amended Class and Collective Action Complaint for unpaid wages against the above-named Defendants.

**INTRODUCTION**

2.      Plaintiffs Nathan Rieck and Brian Poarch and others similarly situated have been employed by Defendants as truck drivers.

3.      Plaintiffs Rieck and Poarch and others similarly situated have been misclassified as independent contractors when they are in fact employees of Defendants, have not been paid all minimum wages owed to them, and have had improper deductions taken from their pay, all in violation of the federal Fair Labor

Standards Act (FLSA) and the Arkansas Minimum Wage Act, Ark. Code § 11-4-201, *et seq.*

4.     Plaintiffs Rieck and Poarch seek compensation for Defendants' violations of the FLSA and the Arkansas Minimum Wage Act on their own behalf and on behalf of all other individuals who have been misclassified as independent contractors, have not been paid at least minimum wage for all hours worked, and/or have had improper deductions made from their pay.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331 because this case arises under federal law, specifically the FLSA, 29 U.S.C. § 201, *et seq.*  This Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367 because those claims arise out of the same circumstances as the FLSA claim and are based on a common nucleus of operative fact.

6.     The Court has personal jurisdiction over Defendants because Defendants' contacts with the state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendants reside in this judicial district.

## PARTIES

8.     Plaintiff Rieck is an adult resident of Corpus Christi, Texas.

9.     Plaintiff Poarch is an adult resident of Yale, Virginia.

10.     Defendant P.A.M. Transport, Inc., is an Arkansas corporation.  Its corporate headquarters are located at 297 West Henri De Tonti Boulevard, Tontitown, Arkansas.

11.     Defendant PAM Cartage Carriers, LLC, is located at 3603 East Raymond Street, Indianapolis, Indiana.

## FACTUAL BACKGROUND

12.     Defendants hired Plaintiff Nathan Rieck in approximately August of 2018.

13.     Defendants hired Plaintiff Brian Poarch in approximately March of 2015.

14.     Defendant PAM Transport, Inc., and Defendant PAM Cartage Carriers, LLC, have over $500,000.00 in gross receipts per year.

15.     Defendant PAM Transport, Inc., and Defendant PAM Cartage Carriers, LLC, hired Plaintiffs Rieck and Poarch and all others similarly situated to transport goods in interstate commerce.

16.     Defendant PAM Transport, Inc., and Defendant PAM Cartage Carriers, LLC, have employed two or more people, including Plaintiffs, to handle and work on materials that move in interstate commerce.

17.     Plaintiff Rieck worked as a truck driver for Defendants from his time of hire until May 2019.

18.     Plaintiff Poarch has been working as a truck driver for Defendants since his time of hire.

19.     In order to begin working as truck drivers for Defendants, drivers are required to attend an unpaid orientation of approximately three days.

20.     Both Plaintiffs attended their respective orientations in Tontitown, Arkansas.

21.     The orientations attended by Plaintiffs are job training both for drivers whom Defendants intended to hire as employees and drivers whom Defendants intended to classify as independent contractors.

22.     Plaintiff Poarch understood that he was being hired as an employee driver, whereas Plaintiff Rieck understood that he was being hired as an independent contractor driver.

23.     During orientation, the drivers were required to attend classes focused on Defendants' policies, procedures, and systems and to perform other tasks typical for new hires.

24.     During orientation, drivers are required to sign forms authorizing Defendants to pay their wages by electronic transfer onto Comdata cards, from which fees are deducted for ATM withdrawals, ATM balance inquiries, debit purchases, and transfers to a bank account, among other fees.

25.     Defendants primarily benefit from the unpaid orientation, because they have a pool of drivers ready to start driving and trained in Defendants' policies, procedures, and systems.

26.     Drivers were employees of Defendants during the orientation, and their attendance at orientation classes should have been compensated but was not.

27.     After approximately six months of driving as an employee driver, Plaintiff Poarch was encouraged by Defendants to become an independent contractor.

28.     In order for Plaintiffs to begin driving for Defendants as independent contractor drivers, they were required to sign contracts with PAM Cartage Carriers, LLC, each entitled "Independent Contractor Operating Agreement."

29.     The agreements are standard-form contracts, drafted by Defendants and presented to the drivers for signature.

30.     The agreements state that it "shall have been deemed to have been constructed with the statutes and laws of the State of Arkansas and in the event of any disagreement or dispute, the laws of this state shall apply and suit must be brought in this state."

31.     The agreements identify PAM Transport, Inc. as the entity to which independent contractor drivers should refer questions about particular aspects of the relationship, and the agreements are signed on behalf of PAM Cartage Carriers, LLC, in Tontitown, the location of PAM Transport, Inc.'s corporate headquarters.

32.     The agreements state that Pam Cartage Carriers, LLC will compensate independent contractor drivers at a fixed rate per dispatched mile.

33.     As part of their employment relationships with Defendants, Plaintiffs Rieck and Poarch were also required to enter into an Equipment Lease Agreement with another entity, Overdrive Leasing LLC.

34.     Overdrive Leasing LLC is an entity related to Defendants.

35.     Plaintiffs were not paid for their time entering into a lease with Overdrive Leasing LLC, selecting a truck, and equipping the truck, all of which were done under Defendants' direction. Upon information and belief, similarly situated misclassified independent contractor drivers were also not paid for this time.

36.     Plaintiffs' job responsibilities while labeled as an independent contractor drivers for Defendants were substantially identical to job responsibilities of employee drivers for Defendants.

37.      Upon information and belief, others similarly situated to Plaintiffs, who were labeled as independent contractors, had job responsibilities substantially identical to the job responsibilities of employee drivers working for Defendants.

38.     Defendants exercised operational and actual control over Plaintiffs and other similarly situated independent contractor drivers under similar, if not substantially identical, agreements through, among other things, either directly or indirectly controlling drivers' scheduling, job assignments, vacations, and home time, requiring drivers to follow Defendants' procedures, effectively requiring that drivers take certain shipments, and rendering drivers unable to work for other trucking and/or shipping companies. Because of the structure of lease payments, the independent contractor drivers have no choice but to take shipments as directed by Defendants or they would quickly fall into default.

39.     Plaintiffs and other drivers classified as independent contractors perform the essential function of Defendants' transport business, Defendants have the ability to

hire and fire them, Defendants control the manner and rate of pay, keep all pay records, and effectively control their schedule through the dispatch system.

40.    Because the drivers had no ability to work for other companies in the short term, and the lease payments were due regardless of what they did, they had no choice but to follow Defendants' dictates in the same manner as any employee.

41.    Plaintiffs and other similarly situated individuals are paid through settlement statements issued by PAM Transport, Inc.

42.    The settlement statements from PAM Transport, Inc., were paid directly to Plaintiffs as individuals.

43.    The settlement statements of Plaintiffs and other similarly situated individuals include amounts owed for work performed (paid by the mile), numerous deductions from pay, and reimbursements for gas.

44.    Most of the deductions made from the pay of Plaintiffs and other similarly situated individuals were unlawful, specifically including deductions for the cost of the trucks and other tools of the trade that the drivers were using for their work for Defendants, deductions for insurance, etc.

45.    Defendants have made unjustified, unpredictable, and poorly explained deductions from the paychecks of Plaintiffs. These deductions were often for items that are the tools of the trade or otherwise for the employer's benefit. Upon information and belief, Defendants have made similar or identical deductions from the paychecks of other drivers misclassified as independent contractors and similarly situated to Plaintiffs.

46.     Defendants also made deductions from Plaintiffs' paychecks for fees associated with their Comdata card, which they were required by Defendants to use for purposes of receiving certain payments.

47.     While Plaintiffs have been employees of Defendants and have been misclassified as an independent contractors, Defendants have often failed to pay them the statutory minimum wage for the hours that Defendants considered them to be working.  For example:

        a.      for the paycheck issued on November 20, 2018, Plaintiff Rieck was supposed to be paid for a total of 2,039 miles.  After unjustified deductions, his pay was $192.65.  Assuming an average of 40 miles traveled per hour, Plaintiff Rieck worked at least approximately 60 hours during that pay period, for which he would be owed minimum wages of at least $435 under the FLSA (60 hours x $7.25) and minimum wages of at least $510 under the Arkansas Minimum Wage Act (60 hours x $8.50);

        b.      for the paycheck issued on November 29, 2018, Plaintiff Rieck was supposed to be paid for a total of 1,563 miles.  After unjustified deductions, his pay was $39.49.  Assuming an average of 40 miles traveled per hour, Plaintiff Rieck worked at least approximately 40 hours during that pay period, for which he would be owed minimum wages of at least $290 under the FLSA (40 hours x $7.25) and minimum wages of at least $340 under the Arkansas Minimum Wage Act (40 hours x $8.50); and

        c.      for the paycheck issued on January 24, 2019, Plaintiff Rieck was supposed to be paid for a total of 1,568 miles.  After unjustified deductions, his pay was $178.47.  Assuming an average of 40 miles traveled per hour, Plaintiff Rieck worked at

least approximately 39 hours during that pay period, for which he would be owed minimum wages of at least $282.75 under the FLSA (39 hours x $7.25) and minimum wages of at least $360.75 under the Arkansas Minimum Wage Act (39 hours x $9.25).

d.      for the paycheck issued on June 5, 2017, Plaintiff Poarch was supposed to be paid for a total of 1,037 miles.  After unjustified deductions, his pay was $14.57.  Assuming an average of 40 miles traveled per hour, Plaintiff Poarch worked at least approximately 26 hours during that pay period, for which he would be owed minimum wages of at least $188.50 under the FLSA (26 hours x $7.25) and minimum wages of at least $221.00 under the Arkansas Minimum Wage Act (26 x $8.50).

e.      For the paycheck issued on March 5, 2018, Plaintiff Poarch was supposed to be paid for a total of 1,342 miles.  After unjustified deductions, his pay was $52.15.  Assuming an average of 40 miles traveled per hour, Plaintiff Poarch worked at least approximately 34 hours during that pay period, for which he would be owed minimum wages of at least $246.50 under the FLSA (34 hours x $7.25) and minimum wages of at least $289 under the Arkansas Minimum Wage Act (34 x $8.50).

f.      for the paycheck issued on August 29, 2019, Plaintiff Poarch was supposed to be paid for a total of 1,316 miles.  After unjustified deductions, his pay was $30.04.  Assuming an average of 40 miles traveled per hour, Plaintiff Poarch worked at least approximately 33 hours during that pay period, for which he would be owed minimum wages of at least $239.25 under the FLSA (33 hours x $7.25) and minimum wages of at least $305.25 under the Arkansas Minimum Wage Act (33 x $9.25).

48.      Plaintiffs, however, put in many more hours of work than just driving.

49.     Plaintiffs frequently were away from home under dispatch by Defendants for many days at a time.

50.     At all times Plaintiffs were responsible for the safety and security of their leased trucks and the loads they transported, which effectively prevented them from using that time for their own purposes.

51.     Plaintiffs were entitled to be paid at least the minimum wage for all of their time while under dispatch for more than 24 hours or while waiting for their next loads, with the exception of 8 hours per 24-hour period for sleeping and bona fide meal breaks.

52.     Defendants are not permitted to deduct from compensable time more than eight hours per 24-hour period for sleep time, *i.e.* time spent in the sleeper berth of the truck.

53.     Defendants regularly counted more than eight hours per day as non-compensable sleep time for Plaintiffs and other drivers misclassified as independent contractors, resulting in the drivers not receiving at least the minimum wage for all compensable work time.

## 29 U.S.C. § 216(b) COLLECTIVE ACTION ALLEGATIONS

54.     Plaintiffs assert Count I under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated employees currently and formerly employed by Defendants.

55.     Plaintiffs consent to sue as plaintiffs under the FLSA.  Their consent to sue forms are attached as Exhibit 1.

56.     Specifically, Plaintiffs seek to represent an FLSA collective defined as: "All individuals who have worked as drivers and have been classified as independent contractors for Defendant PAM Transport, Inc., and/or Defendant PAM Cartage Carriers, LLC."

57.     Plaintiffs and other members of the collective are similarly situated because, among other things, they were all employees of Defendants and, upon information and belief, all suffered from the same policies of Defendants, including:

        a.     They were misclassified as independent contractors;

        b.     They were paid by the mile without regard to the number of hours worked;

        c.     They suffered from improperly made deductions from their paychecks; and

        d.     They were not paid at least statutory minimum wage for each hour of work as mandated by the FLSA.

**RULE 23 CLASS ACTION ALLEGATIONS**

58.     Plaintiffs assert Count II as a Fed. R. Civ. P. 23 class action on their own behalf and on behalf of a class for which Plaintiffs seek certification.

59.     Specifically, Plaintiffs seek to represent a Rule 23 class defined as:  "All individuals who have worked as drivers and have been classified as independent contractors for Defendant PAM Transport, Inc. and/or Defendant PAM Cartage Carriers, LLC."

60.     This case is properly maintainable as a class action under Fed. R. Civ. P. 23(a) and 23(b)(3).

61.     The class is so numerous that joinder of all potential class members is impracticable. Plaintiffs do not know the exact size of the class since that information is within the control of Defendants.

62.     The named Plaintiffs estimate that there are thousands of similarly situated people.  Defendants operate nationally and hire drivers as "independent contractors" from the entirety of the continental United States.  The exact size of the class will be ascertainable from Defendants' records.

63.     There are questions of law or fact common to the classes that predominate over any individual issues that might exist. Common questions of law and fact include whether Defendants have misclassified drivers as independent contractors; whether Defendants have failed to pay drivers at least minimum wage; and whether Defendants have taken improper deductions from drivers' pay.

64.     The class claims asserted by the Plaintiffs are typical of the claims of all of the potential class members. This is an uncomplicated case of unpaid wages that should be mathematically ascertainable from business and computer tracking records and the named Plaintiffs' claims are typical.

65.     Plaintiffs will fairly and adequately protect and represent the interests of each class.  They were misclassified as independent contractors by Defendants and were the victims of the same violations of law as other class members, i.e., the failure to compensate drivers at least the full Arkansas minimum wage for all hours worked.

12

66.     Plaintiffs are represented by counsel experienced in wage and hour litigation and class actions.

67.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for several reasons, including that numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy, the prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants, and class members may be reluctant to bring their claims individually for fear of retaliation from their employers.

68.     Additionally, each class member's claim is relatively small. Thus, the interest of potential class members in individually controlling the prosecution or defense of separate actions is slight.  Public policy supports the broad remedial purposes of class actions in general and the pertinent state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

69.     This class action will not be difficult to manage due to the uniformity of claims among the class members and the amenability of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

70.     The contours of the class will be easily defined by reference to payroll documents Defendants are legally required to create and maintain, pursuant to FLSA

and its regulations, including 29 C.F.R. § 516.2, *inter alia*, along with truck log records and GPS data.

## CLAIMS FOR RELIEF

## COUNT I:  FAIR LABOR STANDARDS ACT (FLSA)
## 29 U.S.C. §§ 201, *ET SEQ.*

71.     Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein.

72.     Plaintiffs assert this claim on behalf of themselves and the FLSA collective pursuant to 29 U.S.C. § 216(b).

73.     Plaintiffs and all others similarly situated have been employed by Defendants as defined by 29 U.S.C. § 203(g).

74.     Plaintiffs and all others similarly situated have been employed by Defendants in an "enterprise engaged in commerce or in the production of goods for commerce," as defined by 29 U.S.C. § 203(s)(1).

75.     Plaintiffs and all others similarly situated have been employed by Defendants for handling and otherwise working on goods or materials that had been moved in or were produced for commerce by any person.

76.     Both Defendants have had annual gross revenues in excess of $500,000.00 and employed two or more persons, including Plaintiffs, who handled and worked on materials which had been moved in interstate commerce.

77.     Plaintiffs and all others similarly situated are individually covered by the FLSA because they engaged in commerce or in the production of goods for commerce.

78.     Defendants have failed to pay Plaintiffs and the FLSA collective the statutory minimum wage for each hour of work as required by the FLSA.

79.     Defendants have taken improper deductions from the wages of Plaintiffs and the FLSA collective.

80.     Defendants' failure to pay the minimum wage as required by the FLSA and their taking of improper deductions have been willful.

81.     Plaintiffs and the FLSA collective are entitled to unpaid minimum wage, liquidated damages, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## COUNT II:
## ARKANSAS MINIMUM WAGE ACT, ARK. CODE ANN. § 11-4-201, *ET SEQ.*

82.     Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein.

83.     Plaintiffs assert this claim on behalf of themselves and the Rule 23 class.

84.     Plaintiffs and those similarly situated are "employees" and Defendants are an "employer" as those terms are defined in Ark. Code Ann. § 11-4-203.

85.     Defendants, in violation of the AMWA, failed to compensate Plaintiffs and those similarly situated at the statutory minimum wage for each hour worked in many workweeks, including but not limited to hours worked that should have compensated pursuant to AR DOL Rule No. 010.14-108(d)(3) but were not.

86.     Plaintiff and the Rule 23 class are entitled to unpaid minimum wage, liquidated damages, attorneys' fees and costs pursuant to Ark. Code Ann. § 11-4-218.

## COUNT III:
## ARKANSAS COMMON LAW CLAIM (UNJUST ENRICHMENT)

87.     Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein.

88.     Defendants have received and benefitted from the uncompensated and undercompensated labor of Plaintiffs and the Rule 23 class.

89.     Plaintiffs and the Rule 23 class have been harmed by the failure to receive adequate compensation for their labor.

90.     For Defendants to retain the benefits of their labor without adequate compensation would be inequitable and constitute unjust enrichment.

## COUNT IV:
## ARKANSAS COMMON LAW CLAIM (BREACH OF CONTRACT)

91.     Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein.

92.     Defendants' contracts with Plaintiffs and the Rule 23 class require Defendants to compensate drivers at a fixed rate per mile.

93.     After deductions, Defendants failed to compensate Plaintiffs and the Rule 23 class at the fixed rate, thereby breaching their own contracts.

94.     Plaintiffs and the Rule 23 class have been deprived of compensation to which they were entitled and therefore have been injured by Defendants' breach of contract.

## DEMAND FOR JURY TRIAL

90.     Plaintiff demands a jury for all issues so triable.

16

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court grant the following relief:

a.      That each Defendant be summoned to appear and answer;

b.      Certification of a collective pursuant to the FLSA, 29 U.S.C. §§ 201, *et seq.*;

c.      An order that appropriate notice of this suit and the opportunity to opt into it be provided to all potential members of the FLSA collective;

d.      An award to Plaintiffs and the FLSA collective of unpaid minimum wages, pursuant to 29 U.S.C. §§ 206 and 216;

e.      An award to Plaintiffs and the FLSA collective of liquidated damages pursuant to 29 U.S.C. § 216;

f.      An order that the statute of limitations for the FLSA claim be three years pursuant to 29 U.S.C. § 255;

g.      An award to Plaintiffs and the FLSA collective of costs and attorneys' fees pursuant to 29 U.S.C. § 216(b);

h.      Certification of this action as a class action under Rule 23(b)(1), 23(b)(2) and 23(b)(3);

i.      An order that appropriate notice of this suit be provided to all potential members of the Rule 23 class;

j.      An award to Plaintiffs and the Rule 23 class of damages, liquidated damages and penalties, and attorneys' fees and costs, pursuant to Ark. Code Ann. § 11-4-218 and any other statutory damages available to employees under the AMWA or otherwise;

k.      An order enjoining Defendants from continuing to engage in their unlawful

      practices pursuant to Ark. Code Ann. § 11-4-218; and

l.      Granting such other relief as this Court deems just and proper.

Respectfully submitted,

NATHAN RIECK and BRIAN POARCH,
on behalf of themselves and all others similarly
situated,

By their attorneys,


*/s/Hillary Schwab*
Josh Sanford
Ark. Bar No. 2001037
SANFORD LAW FIRM, PLLC
One Financial Center
650 South Shackleford, Suite 411
Little Rock, AR 72211
Tel: (501) 221-0088
Fax: (888) 787-2040
Email: josh@sanfordlawfirm.com

Hillary Schwab
*Admitted pro hac vice*
Rachel Smit
*Admitted pro hac vice*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel:  (617) 607-3260
Fax:  (617) 488-2261
Email: hillary@fairworklaw.com,
rachel@fairworklaw.com


Dated: November 7, 2019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true copy of this document to be served via electronic filing on all counsel of record on November 7, 2019.

*/s/ Hillary Schwab*
Hillary Schwab
